IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JANIS FINN, )<br>)<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>WEST PENN ALLEGHENY HEALTH )<br>SYSTEM INC., ALLEGHENY HEALTH )<br>NETWORK, )<br>)<br>Defendants. ) | 2:20-CV-01513-CCW |

## MEMORANDUM OPINION

Before the Court is a Motion for Summary judgment filed by Defendants West Penn Allegheny Health System Inc. ("WPAHS") and Allegheny Health Network ("AHN"). *See* ECF No. 24. Defendants' Motion is fully briefed and ripe for disposition. For the following reasons, Defendants' Motion will be DENIED.

**I.    Background**

   **A.    Procedural History**

Plaintiff Janis Finn filed her Complaint on October 7, 2020. *See* ECF No. 1. Ms. Finn claims she was discriminated against on the basis of age when Defendants terminated her in 2019, in violation of the Age Discrimination in Employment Act (the "ADEA") (Count I) and the Pennsylvania Human Relations Act (the "PHRA") (Count II). *See generally id.*

Defendants filed an Answer, *see* ECF No. 9, and the parties proceeded into discovery. The discovery period closed on June 4, 2021, and the Court set deadlines for filing and briefing motions for summary judgment. *See* ECF Nos. 17 & 22. Defendants then filed their Motion for Summary Judgment, *see* ECF No. 24, which is now fully briefed and ripe for disposition.

B.     **Relevant Material Facts**

The following facts, drawn from the parties' concise statements of material fact and responses thereto,[1] are undisputed, unless noted otherwise:

1.     **Ms. Finn's Role at West Penn Allegheny Health System Inc**

Ms. Finn was hired by Defendant WPAHS in April 2017 as a Patient Experience Manager assigned to Jefferson Hospital. ECF No. 30 ¶ 1. In her role as Patient Experience Manager, Ms. Finn worked closely with Jefferson Hospital Leadership and staff and was responsible for: (1) providing Jefferson Hospital leaders and stakeholders with patient satisfaction data and analysis; (2) implementing patient experience improvement efforts at Jefferson Hospital, such as coordinating trainings, coaching and mentoring processes; and (3) building strong working relationships with Jefferson Hospital leaders, physicians, clinical and non-clinical management team members and employees in all departments. *Id.* ¶¶ 3–5.

2.     **Relevant Individuals**

During her employment, Ms. Finn had three direct supervisors in the following order: Ms. Claire Fletcher, Mr. Chris Meaner, and Ms. Barb Bobula. Each of these supervisors reported to Senior Vice President of Patient Experience, Ms. Jennifer Certo. *Id.* ¶¶ 6–8. In addition, the following individuals either provided feedback regarding Ms. Finn's performance or were otherwise involved in the employment decisions involving Ms. Finn: Ms. Charm Lea (Director of Human Resources), Ms. Renee Holtzman (Human Resource Specialist), Joy Peters (Jefferson Hospital Chief Nursing Officer), and Louise Urban (Jefferson Hospital President and Chief Executive Officer). ECF No. 30 ¶¶ 9, 26, 75; ECF No. 35 ¶ 10.

---

[1] *See* ECF Nos. 26 (Defendants' Concise Statement of Material Facts), 30 (Ms. Finn's Response to Defendants' Concise Statement of Material Facts), 32 (Ms. Finn's Counter Statement of Material Facts), and 35 (Defendants' Response to Ms. Finn's Counter Statement of Additional Material Facts).

### 3. Ms. Finn's Performance Review

In late October 2018, Ms. Bobula became Ms. Finn's supervisor. *Id.* ¶ 14. Ms. Bobula did not have any discussions with Ms. Finn about any performance issues prior to meeting with her on January 25, 2019, when Ms. Bobula gave Ms. Finn an "off track" performance review for 2018. ECF No. 35 ¶ 45. Ms. Bobula raised four issues during the performance review: (1) Ms. Finn had invited the dietary staff to participate in the executive leader rounds; (2) Ms. Finn's "non-verbals" were "difficult to read"; (3) Ms. Finn required too much assistance from the C-Suite leadership regarding groupings for the executive leader rounds; and (4) Ms. Finn's ability to navigate and interpret the data system. *Id.* ¶¶ 21, 26, 28, 31. The next day, Ms. Bobula emailed Ms. Finn a summary of their discussion with next steps and "tools to help with plan development." ECF 30 ¶¶ 38, 52; ECF No. 27-3 (email dated January 26, 2019 from Ms. Bobula to Ms. Finn).

### 4. WPAHS' Workplace Optimization Initiative and Ms. Finn's Termination

In early February 2019, WPAHS announced a system-wide "Workplace Optimization Initiative," or reduction in force, that required Patient Experience to reduce its salary budget by 4%. ECF No. 30 at ¶¶ 57–59. In February 2019, Ms. Finn was 57, and Ms. Pavlik, the Patient Experience Manager at Canonsburg Hospital, was 33. ECF No. 27-1; ECF No. 30 ¶ 66.

On April 5, 2019, Ms. Bobula and Human Resource Specialist Ms. Holtzman informed Ms. Finn that she was being terminated. ECF No. 30 ¶ 75. During that meeting, Ms. Bobula informed Ms. Finn that, as part of a reduction in force, the Patient Experience Manager roles for Jefferson Hospital and Canonsburg Hospital were being combined. *Id.* ¶ 76. WPAHS retained Ms. Pavlik, who was rated "On Track High Performer," instead of Ms. Finn. *Id.* ¶¶ 67–68.

### 5. Disputed Facts

The parties dispute many facts in this case, which revolve around three themes: (1) whether Ms. Certo and Ms. Bobula were aware of the consolidation of the Patient Experience Manager position prior to rating Ms. Finn off track; (2) who was involved in Ms. Finn's off track rating, performance management, and termination due to the consolidation of the Patient Experience Manager position; and (3) the content of Ms. Finn's 2018 performance review compared to prior performance. *See* ECF Nos. 31 & 34.

## II. Standard of Review

To prevail on a motion for summary judgment, the moving party must establish that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A factual dispute is 'genuine' if the 'evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Razak v. Uber Techs., Inc.,* 951 F.3d 137, 144 (3d Cir. 2020) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). "A factual dispute is 'material' if it 'might affect the outcome of the suit under the governing law.'" *Id.* (quoting *Anderson*, 477 U.S. at 248). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *NAACP v. N. Hudson Reg'l Fire & Rescue,* 665 F.3d 464, 475 (3d Cir. 2011) (quoting *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

The burden to establish that there is no genuine dispute as to any material fact "remains with 'the moving party regardless of which party would have the burden of persuasion at trial.'" *Aman v. Cort Furniture Rental Corp.*, 85 F.3d 1074, 1080 (3d Cir. 1996) (quoting *Chipollini v. Spencer Gifts, Inc.*, 814 F.2d 893, 896 (3d Cir. 1987)). Furthermore, "[i]f the non-moving party bears the burden of persuasion at trial, 'the moving party may meet its burden on summary

judgment by showing that the nonmoving party's evidence is insufficient to carry that burden.'" *Kaucher v. County of Bucks*, 455 F.3d 418, 423 (3d Cir. 2006) (quoting *Wetzel v. Tucker*, 139 F.3d 380, 383 n.2 (3d Cir. 1998)).

Once the moving party has carried its initial burden, the party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts…Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Matsushita*, 475 U.S. at 586–87. Thus, while "[t]he evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor," *Anderson*, 477 U.S. at 255, "Rule 56(e) . . . requires the nonmoving party to go beyond the pleadings" and point to "'specific facts showing that there is a genuine issue for trial.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986) (citation omitted). But, while the court must "view the facts in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor . . . to prevail on a motion for summary judgment, the non-moving party must present more than a mere scintilla of evidence;  there must be evidence on which the jury could reasonably find for the [non-movant]." *Burton v. Teleflex Inc.*, 707 F.3d 417, 425 (3d Cir. 2013) (internal citations omitted).

### III.   Discussion:  Defendants' Motion for Summary Judgment will be Denied

As noted above, Ms. Finn alleges discrimination on the basis of age in violation of (1) the ADEA (Count I) and (2) the PHRA (Count II).  Defendants have moved for summary judgment in their favor on both counts.  Because the United States Court of Appeals for the Third Circuit "has determined that the interpretation of the PHRA is identical to that of federal anti-discrimination laws, including the ADEA," the Court will address the claims together. *Willis v. UPMC Children's Hosp. of Pittsburgh*, 808 F.3d 638, 643 (3d Cir. 2015) (citing *Connors v. Chrysler Fin. Corp.*, 160

F.3d 971, 972 (3d Cir. 1998) ("There is no need to differentiate between . . . ADEA and PHRA claims because . . . the same analysis is used for both.")).

### A. *McDonnell Douglas* Burden Shifting Framework

"The ADEA prohibits employers from 'discharg[ing] any individual or otherwise discriminat[ing] against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age.'" *Willis*, 808 F.3d at 643–44 (quoting 29 U.S.C. § 623(a)(1)). A plaintiff in an ADEA case must establish, by a preponderance of the evidence, that age was the "but-for" cause of the complained-of adverse employment action. *See Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 177–78 (2009). To prove such claims, a plaintiff may rely on either direct or circumstantial evidence of discrimination. Where, as here, a plaintiff relies on circumstantial evidence, courts apply the familiar *McDonnell Douglas* burden-shifting framework. *See Willis*, 808 F.3d at 644).

#### 1. Defendants Do Not Contest that Plaintiff Has Established a Prima Facie Case

Under the *McDonnell Douglas* framework, a plaintiff must first establish a prima facie case of discrimination by pointing to evidence supporting the following elements: (1) the plaintiff is at least forty years old; (2) the plaintiff was qualified for the position in question; (3) the plaintiff suffered an adverse employment action; and (4) the plaintiff was ultimately replaced by someone sufficiently younger so as to support an inference of discrimination. *See Willis*, 808 F.3d at 644 (citing *Burton,* 707 F.3d at 426). Producing evidence sufficient to satisfy the elements of a prima facie case creates an "inference of unlawful discrimination." *Pivirotto*, 191 F.3d at 357.

Defendants do not contest that Ms. Finn has established a prima facie of age discrimination claim. ECF No. 25 at 7.

### 2. Defendants Have Articulated a Legitimate, Nondiscriminatory Reason for Ms. Finn's Termination

At the second step of the *McDonnell Douglas* analysis, the burden of production shifts to the employer to "articulate a legitimate nondiscriminatory reason for the adverse employment action." *Jones v. Sch. Dist. of Phila.*, 198 F.3d 403, 412 (3d Cir. 1999) (citing *Keller*, 130 F.3d at 1108); *Burton*, 707 F.3d at 426 (quoting *Tomasso v. Boeing Co.*, 445 F.3d 702, 706 (3d Cir. 2006)) ("This burden is 'relatively light' and is satisfied if the employer provides evidence, which, if true, would permit a conclusion that it took the adverse employment action for a non-discriminatory reason.").

Ms. Finn does not contest that Defendants have articulated a legitimate nondiscriminatory reason for the adverse employment action. *See* ECF No. 31 at 7. Defendants contend that Ms. Finn was terminated because of the consolidation of two positions during an overall workforce optimization initiative in which they selected Ms. Pavlik over Ms. Finn due to Ms. Pavlik's superior performance. ECF No. 25 at 8–9. This is sufficient for Defendants to meet their burden at the second step of the *McDonnell Douglas* analysis.

### 3. A Reasonable Factfinder Could Conclude that Defendants' Reason for Terminating Ms. Finn was Pretextual

#### a. Legal Standard for Pretext

If the employer meets its burden at the second step, "[t]he third step in the *McDonnell Douglas* analysis shifts the burden of production back to the plaintiff to provide evidence from which a factfinder could reasonably infer that the employer's proffered justification is merely a pretext for discrimination." *Burton*, 707 F.3d at 426–27 (citing *Fuentes*, 32 F.3d at 764–65). The Court "should not consider the record solely in piecemeal fashion, giving credence to innocent explanations for individual strands of evidence, for a jury . . . would be entitled to view the evidence as a whole." *Abramson v. William Paterson Coll.*, 260 F.3d 265, 285 (3d Cir. 2001)

7

(citing *Howley v. Town of Stratford*, 217 F.3d 141, 151 (2d Cir. 2000)).  To make this showing of pretext and defeat summary judgment, a plaintiff must point to evidence that would allow a factfinder to reasonably either:  "'(1) disbelieve the employer's articulated legitimate reasons;  or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action.'"  *Burton*, 707 F.3d at 427 (quoting *Fuentes*, 32 F.3d at 764).

Ms. Finn's opposition to Defendants' Motion addresses only the first *Fuentes* method—evidence that would allow a factfinder to reasonably disbelieve the Defendants' articulated legitimate reasons.  ECF No. 31 at 8–17.  To meet her burden under this method, Ms. Finn's evidence "'must demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them 'unworthy of credence.'"  *Burton*, 707 F.3d at 427 (quoting *Fuentes*, 32 F.3d at 765).  "To discredit the employer's proffered reason, however, the plaintiff cannot simply show that the employer's decision was wrong or mistaken, since the factual dispute at issue is whether discriminatory animus motivated the employer, not whether the employer is wise, shrewd, prudent, or competent."  *Fuentes*, 32 F.3d at 765.

### b. Inconsistencies and Contradictions in the Record Would Allow a Reasonable Jury to Find Pretext

Ms. Finn contends that there are multiple inconsistencies which, taken together, would allow a reasonable jury to find that Defendants' rationale for terminating her—the retention of Ms. Pavlik as part of system-wide workforce optimization instead of Ms. Finn, who was rated off track—was pretextual. ECF No. 31 at 8–9. Viewing the record as a whole, the Court concludes that a reasonable factfinder could find Defendants' alleged reason for terminating Ms. Finn "unworthy of credence," because of inconsistences and contradictions in the testimony of Ms.

Bobula and Ms. Certo regarding their knowledge of the Patient Manager Experience consolidation; contradictions in identifying the decisionmakers involved in Ms. Finn's performance evaluation, management, and subsequent termination; and in the documentation of Ms. Finn's performance history.

        **i.     Knowledge of the Consolidation of Ms. Finn's Position at the Time of Ms. Finn's Off Track Review**

The parties dispute whether Ms. Finn's supervisor, Ms. Bobula, and Ms. Bobula's supervisor, Senior Vice President of Patient Experience Ms. Certo, knew of the planned consolidation of the Patient Experience Manager position when Ms. Bobula rated Ms. Finn off track on January 25, 2019.  *Compare* ECF No. 31 at 12–13 *with* ECF No. 25 at 11 *and* ECF No. 34 at 5.  If they knew of the planned consolidation before rating Ms. Finn off track, then this knowledge, together with factual disputes relating to Ms. Finn's performance, could cause a reasonable jury to infer that the reasons behind Ms. Finn's off track rating and termination were "unworthy of credence."  *See Braden v. Lockheed Martin Corp.*, No. 14-4215(RMB/JS), 2017 U.S. Dist. LEXIS 207236, at *28 (D.N.J. Dec. 18, 2017) (noting that a jury may disbelieve testimony indicating that at the time employees were placed in certain groups, there had not yet been a decision to eliminate specific groups).

Defendants contend that Ms. Bobula and Ms. Certo became aware of the consolidation of the Patient Experience Manager position when the workforce optimization was announced *after* Ms. Finn's review, and that any discrepancies in testimony are not necessarily inconsistent with the idea that Ms. Bobula and Ms. Certo were unaware when Ms. Finn was rated off track that her specific position would be consolidated.  ECF No. 25 at 11;  ECF No. 34 at 5.  Ms. Finn points to inconsistencies in Ms. Bobula's and Ms. Certo's testimony and contends that they were aware that

the Patient Experience Manager position would be consolidated prior to rating her off track. ECF No. 31 at 12–14.

Ms. Bobula testified that, as she was starting the performance review process in early January 2019, she was not already aware that the positions at Jefferson and Canonsburg were going to be consolidated. *Id.* at 54:13–55:25, 87:23–88:11. However, Ms. Bobula also testified that sometime prior January 2019 she had had at least one general conversation with Ms. Urban, Jefferson Hospital President and Chief Executive Officer, about consolidating those two positions. *Id.* at 54:13–56:3 (testifying that the second conversation with Ms. Urban took place in early January 2019). Although Defendants characterize this as an informal conversation, ECF No. 35 ¶ 56, Ms. Bobula recounted that Ms. Urban identified the elimination of Ms. Finn, thereby leaving Ms. Pavlik in the consolidated role. ECF No. 33-1 at 54:13–55:25, 87:23–88:13 ("[Ms. Urban] felt that [Ms. Pavlik] could manage being the manager at both sites, and she was promoting the idea that we condense the positions as they were doing with other roles and eliminate [Ms. Finn's] position and condense it into one manager role."). Despite this conversation, Ms. Bobula testified that the informal discussion with Ms. Urban "had not [] weighed into [her] decision to mark [Ms. Finn] off track." *Id.* at 88:7–13.

Ms. Certo testified that she first discussed the combination of the Patient Experience Manager positions when she became aware of the workforce optimization on February 11, 2019. ECF No. 33-2 at 53:12–54:5. However, Ms. Certo also testified that she was aware during fall of 2018 that Canonsburg and Jefferson Hospitals were consolidating some management positions. *Id.* at 52:21–53:15; ECF No. 35 at 57. In a vacuum, Ms. Certo's testimony, at best, shows an informal awareness of the potential consolidation. However, when taken with Ms. Bobula's testimony, the extent of Ms. Certo's awareness is unclear because Ms. Bobula testified that she

10

thought Ms. Urban had also previously discussed with Ms. Certo the idea of eliminating Ms. Finn and replacing her with Ms. Pavlik.  ECF No. 33-1 at 54:15–55:9.

Viewing these facts in the light most favorable to Ms. Finn, a reasonable jury could conclude from Ms. Certo's and Ms. Bobula's testimony that each of them knew of the planned consolidation before Ms. Finn was rated off track in January 2019.

### ii. Inconsistencies in Identifying the Decisionmakers

The parties disagree about who the relevant decisionmakers were in this case.  Specifically, they disagree about who was responsible for:  (1) rating Ms. Finn off track, (2) deciding to consolidate the Patient Experience Manager position, and (3) deciding to terminate Ms. Finn.  Defendants assert that they consistently identified Ms. Finn's "supervisor, Barb Bobula;  [Ms.] Bobula's supervisor, Jennifer Certo;  Jefferson Hospital leadership[;] and Human Resources as either making or providing input in connection with the decisions to rate [Ms. Finn] 'off track,' combine the Patient Experience Manager positions, and/or select [Ms.] Pavlik over [Ms. Finn] to fill the combined role."  ECF No. 34 at 3.  Ms. Finn contends that Defendants are playing "hide-the-decisionmaker" on her off track rating and termination.  ECF No. 31 at 9–12.  *See DeCecco v. UPMC*, 3 F. Supp. 3d 337, 373 (W.D. Pa. 2014) (discussing cases in which a defendant "hid the identity of the final decisionmaker in a way that is probative of pretext").

The record shows that there is a lack of clarity over who made the decision to rate Ms. Finn off track.  For example, Ms. Bobula stated that she "relied on [her] personal experience supervising Ms. Finn" and feedback from other management personnel to rate Ms. Finn off track.  ECF No. 33-6.  During her deposition, Ms. Bobula testified that she consulted with Ms. Certo about the idea of rating Ms. Finn off track.  ECF No. 35 ¶ 2.  According to Ms. Certo, she and Ms. Bobula decided in collaboration with the hospital leadership to rate Finn off track for the 2018 performance review

on January 25, 2019. *Id.* ¶ 3. However, Ms. Finn testified that Ms. Bobula had told her that Ms. Certo had instructed Ms. Bobula to rate Ms. Finn off track. ECF No. 35 at 19–20. Ms. Bobula denies this assertion. ECF No. 35 at 19–20; *see also* ECF No. 33-6 (asserting that Ms. Bobula was "not told, pressured or forced by anyone to make that determination."). There is further dispute over who made the decision to consolidate the Patient Experience Manager positions and ultimately terminate Ms. Finn. *See generally*, ECF No. 35 ¶¶ 9–18.

These purported inconsistencies are insufficient, without more, to show that Defendants were playing "hide-the-decisionmaker." However, Ms. Finn also points to the lack of recollection by Ms. Holtzman, the Human Resource Specialist who was located at Jefferson Hospital, of her involvement in Ms. Finn's performance management. ECF No. 31 at 16–17. Ms. Holtzman's lack of recollection contrasts with testimony from Director of Human Resources Ms. Lea, who directly supervised Ms. Holtzman. First, Ms. Lea testified that Ms. Holtzman provided feedback regarding Ms. Finn's performance. ECF No. 33-5 at 26:10–25. Specifically, Ms. Lea testified that she spoke with Ms. Holtzman more than five times about Ms. Finn's performance. *Id.* at 26:23–25. However, Ms. Holtzman testified that she would not be "expected to be involved in [Ms. Finn's performance management] process," because Ms. Finn's position was part of a "corporate system-wide services structure." ECF No. 33-4 at 43:22–44:7. Ms. Holtzman further testified that she did not recall discussing Ms. Finn's performance other than in a single meeting with Ms. Bobula and the Jefferson Hospital Chief Nursing Officer Ms. Peters, nor did she recall whether anyone from Jefferson Hospital leadership brought her any concerns regarding Ms. Finn's performance. ECF No. 33-4 at 21:5–13; *see also* 23:9–26:16 ("Q: Did you ever have a meeting with [Ms. Lea] to discuss [Ms. Finn's] performance? A: "Not that I recall."); ECF No. 30 ¶ 26. Despite this assertion, Ms. Lea testified that Ms. Holtzman said "[t]hat there were concerns within the hospital

12

regarding Janis' performance …. [Ms. Holtzman] also stated that the negativity within [sic] in meetings, the poor body language, the lack of engaging in the patient experience of the hospital," all of which was based on Ms. Holtzman's own interactions with Ms. Finn and others at the hospital. ECF No. 33-5 at 26:10–22. Ms. Lea also documented specific feedback from Ms. Holtzman in a February 3, 2019 email. ECF No. 33-9 (describing discussions with Ms. Holtzman regarding Ms. Finn). Given that Ms. Holtzman was the human resources partner located at Jefferson Hospital—the hospital where Ms. Finn was employed—the inconsistencies between Ms. Lea and Ms. Holtzman's testimony surrounding the issues of Ms. Finn's performance are significant.

Together, the inconsistencies regarding the relevant decisionmakers when viewed in the light most favorable to Ms. Finn, allow a reasonable jury to conclude that the reasons behind Plaintiff's off track rating and termination were "unworthy of credence."

### iii.     Documentation of Ms. Finn's Performance History

Ms. Finn also contends that the performance issues identified in her off track performance review are not supported by her performance history, and therefore her off track rating was "weak, implausible and contradicted by record evidence." ECF No. 31 at 13–17. In support, Ms. Finn points to positive comments both from Ms. Bobula and Ms. Certo in her 2018 Performance Acceleration Review, ECF No. 35 ¶¶ 48–49, and contests four issues that were raised by Ms. Bobula during Ms. Finn's review, ECF No. 31 at 13–17. Defendants counter that summary judgment is appropriate because there is evidence of negative feedback by Ms. Urban, Ms. Certo, and Ms. Peters, and as well as Ms. Bobula's own concerns with Ms. Finn's performance. ECF No. 25 at 11–12.

Defendants are correct that "[p]retext is not established by virtue of the fact that an employee has received some favorable comments in some categories or has, in the past, received some good evaluations." *Ezold v. Wolf, Block, Schorr & Solis-Cohen*, 983 F.2d 509, 528 (3d Cir. 1992). Further, to discredit the basis for her discharge, an employee "cannot simply show that the employer's decision was wrong or mistaken." *Fuentes v. Perskie*, 32 F.3d 759, 765 (3d Cir. 1994).

Here, Ms. Finn is not relying on her past performance or own testimony *alone* to establish pretext. *See Power v. Lockheed Martin Corp.*, 419 F. Supp. 3d 878, 895 (E.D. Pa. 2020); *cf. Slater v. Susquehanna Cnty.*, 465 F. App'x 132, 137 (3d Cir. 2012) (granting summary judgment because the employee's testimony denying the incidents was insufficient on its own to show pretext).

Despite Ms. Certo's testimony about concerns from others regarding Ms. Finn's performance as early as Fall 2017, ECF No. 33-2 at 34:17–35:4, Ms. Finn's prior supervisors, Ms. Fletcher and Mr. Meaner, did not document Ms. Finn's performance issues. *Id.* at 25:11–19; ECF No. 33-2 at 32:18–22; *see also* ECF No. 35 ¶ 47. Ms. Certo was unable to explain why they did not do so, notwithstanding the fact that Ms. Certo, as their direct supervisor, asked them to address Ms. Finn's performance. ECF No. 33-2 at 25:2–19 (testifying that she asked Ms. Fletcher to put Ms. Finn on a performance improvement plan and noting that Ms. Fletcher did not do so); ECF No. 33-2 at 32:1–33:11 (testifying that she asked Mr. Meaner to observe and evaluate Ms. Finn's performance and noting that Mr. Meaner did not document the performance issues that he identified); *see also* ECF No. 35 ¶ 47.[2]

---

[2] Ms. Lea testified that the policy was to have managers record performance concerns with an employee. ECF No. 33-4 at 33:3-17 ("Q. ... [W]as there a mechanism or, like, a document or somewhere in the system that a manager could make a notation about a performance concern or a conversation with an employee about a performance concern? A. Formally, formal documentation could be made in Workday, which is the HRIS. Informal notes could be kept within a manager's own repository. Q. Okay. And informal notes that would be kept by the manager, are managers instructed to provide those to HR to have them filed in a personnel file, or are they permitted to just keep notes about employees and not record them anywhere? A. The policy is to record them.")

Further, in an email exchange the day *before* Ms. Finn's performance review, Ms. Certo questioned an evaluation of a training presentation that was given by Ms. Finn in January 2019 where Ms. Finn received "all fives" for her presentation and noted that "[t]his makes our efforts difficult with what we are trying to accomplish in collaboration with you all." ECF No. 33-2 at 116:8–117:5. When asked to clarify the meaning of "our efforts" during her deposition, Ms. Certo specified that it was an effort to put Ms. Finn on a performance improvement plan. *Id.* at 117:22–25.

Finally, when Ms. Bobula labelled Ms. Finn as off track in an email to Ms. Certo, she also noted that she "will have more to go on once [she] get[s] the feedback from those that work with [Ms. Finn] at Jefferson and will discuss with [Ms. Finn]." ECF No. 35 ¶ 7. Defendants contend that this is immaterial because Ms. Bobula "also testified that she received feedback about Plaintiff's performance from Jefferson Hospital President and Chief Executive Officer Louise Urban in early January 2019" and from Jefferson Hospital leadership. *See Id.* ¶ 7 (Defendants' response). Ms. Bobula also testified that aside from soliciting feedback from others, she looked at Ms. Finn's prior review, however, she did not receive a copy of Ms. Finn's 2016/'17[3] performance review until *after* she had met with Ms. Finn, and such document did not indicate a performance concern or negative feedback. ECF No. 33-1 at 240:16–243:1.

Ms. Finn's contentions that she had positive feedback and that the rationale behind her review was weak and implausible, on their own, are insufficient to survive summary judgment. However, when taken in light most favorable to the Ms. Finn, the lack of documentation of Ms. Finn's prior performance issues, which are alleged to have started as early as Fall 2017, together

---

[3] The Court notes that Plaintiff was hired April 10, 2017. ECF No. 30 ¶ 1. Therefore, viewing the facts in the light most favorable to Ms. Finn and drawing all reasonable inferences in her favor, the 2016/'17 review would appear to be her most recent performance review prior to her 2018 performance reviewing marking her off track.

with Ms. Bobula's email that "she would have more go on" for Ms. Finn's off track rating and Ms. Certo's email that positive feedback makes "makes our efforts difficult," permits a reasonable factfinder to conclude that Defendants' articulated legitimate reason behind Plaintiff's off track rating and termination was "unworthy of credence." *Fabrizio v. UPMC*, Civil Action No. 10-1175, 2012 U.S. Dist. LEXIS 127563, at *58 (W.D. Pa. Apr. 23, 2012) (Mitchell, M.J.), *report and recommendation adopted by*, 2012 U.S. Dist. LEXIS 127558 (W.D. Pa., Sept. 7, 2012) ("although Plaintiff could not assert her own good performance in response to 'employer produced performance reviews and other documentary evidence of misconduct and insubordination,' if the employer never documented these alleged deficiencies and only raises them now, the trier of fact must be allowed to hear this evidence and consider whether it is a post-hoc rationalization in response to Plaintiff's claim of age discrimination.").

Viewing the record as a whole, the Court concludes that genuine issues of material fact exist regarding pretext.

**IV.     Conclusion**

For the foregoing reasons, Defendants' Motion for Summary Judgment will be DENIED.

DATED this 12th day of January, 2022.

BY THE COURT:

/s/ Christy Criswell Wiegand
CHRISTY CRISWELL WIEGAND
United States District Judge

cc (via ECF email notification):

All Counsel of Record